Christopher A. Seeger
Christopher Ayers
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, New Jersey 07660
(973) 639-1000

James E. Cecchi
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRIDY & ANGELO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JIM CUMMINGS, DAVID DINKEVICH, AND RICHARD STEIN, <br><br> individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> HONDA MOTOR COMPANY LIMITED AND AMERICAN HONDA MOTOR CO., INC.., <br><br> Defendants. | Civil Action No. _____ <br><br> **CLASS ACTION COMPLAINT and** <br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Jim Cummings, David Dinkevich, and Richard Stein (collectively "Plaintiffs"), on behalf of themselves and all others similarly situated (the "Class members"), alleges the following against defendants Honda Motor Company Limited and American Honda Motor Co., Inc. (collectively "Honda" or "Defendants"). The allegations herein are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to all other matters based on an investigation by counsel.[1]

## I.   INTRODUCTION

1.       This action concerns a dangerous defect in the low-pressure fuel pump (the "Fuel Pump Defect" or "defect") which can fail and cause Honda's most popular models, such as the Civic, as well as its marque Acura vehicles, to unexpectedly stall and cause engine shut down even when the vehicle is at high speeds, presenting an immediate and unreasonable risk of physical injury or death.

2.       The fuel system is  one of the most basic and critical systems in every gasoline-powered vehicle sold in the United States and throughout the world because it controls speed and keeps the  engine running unless until the driver chooses to turn it off.  The fuel injection system uses fuel pumps to manage the flow of fuel from the fuel tank to the engine. Without fuel, a vehicle will lose power even if in operation.

3.        The fuel system is also a key to safe operation of a vehicle.  If the fuel system in a vehicle is defective, the vehicle will no longer accelerate and decelerate controllably and could stall and lose power completely, even when in operation and in motion, exposing occupants and others to

---

[1] Counsel's investigation includes an analysis of publicly available information, including investigations by the National Highway Traffic Safety Administration ("NHTSA"), vehicle recalls, and additional analysis.  Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

extreme danger, or even death.  A vehicle that stalls or suffers engine failure is at heightened risk of collision, and those stranded as a result of vehicle shutdown experience a heightened risk of danger.

4.      Honda has manufactured, marketed and sold the  Class Vehicles with defective low-pressure fuel pumps that cause   unpredictable acceleration and engine stalls and render the Class Vehicles unsafe to operate.

5.      Despite admitted knowledge of the defect, Honda has acted slowly and insufficiently to address the scope and scale of the danger posed by the defect.  It failed to fully and promptly disclose the defect and the corresponding dangers to Plaintiffs and Class members, and has not repaired or replaced all the defective systems.

6.      Class Vehicles include *all* Honda and Acura models that use the Denso low-pressure fuel  pumps and fuel pump assemblies, including pumps that begin with part number prefix 17045-T.

7.      On April 27, 2020, the manufacturer of the fuel pumps selected by Honda for use in its Class Vehicles, announced a recall of its fuel pumps.  However, Honda took no action to initiate a recall until May 28, 2020 when it submitted a Safety Recall Report to the National Highway Traffic Safety Administration ("NHTSA") concerning these defective fuel pumps (the "Initial Safety Recall Report"), recalling over 136,000 vehicles ("Recalled Vehicles").  Exhibit A hereto.  In the Initial Recall Notice, Honda admitted that the defect is expected to be in each and every one of the Recalled Vehicles, and to have known about the defect since as early as February 2019.

8.      Subsequent amendments to the Initial Safety Recall Report gradually set out the schedule for notice to the public and, ultimately, the potential schedule for replacement of the defective fuel pumps.  Exhibits B-E hereto. As of the  most recent Safety Recall Report (Fourth Safety Recall Report) filed on August 14, 2020, Honda stated that parts to complete the needed

repairs in many of the Recalled Vehicles would not be available until October 14, 2020.  Exhibit E, at 9

9.      As of the date of this complaint, the Recalled Vehicles include the following: 2018-2019 Accord, 2018-2019 Civic Hatchback, 2018-2019 Civic Type R, 2019 Fit, 2018-2019 HR-V, 2019-2020 Insight, 2018-2019 Acura NSX, 2019 Acura RDX, and 2019 Acura RLX and RLX Sport Hybrid.

10.      It is believed based on investigations completed to date that the defective fuel system was used by Honda in more than the Recalled Vehicles.  Based on the availability of the defective part and complaints to NHTSA, this  defect has existed in fuel pumps that may have been used in Honda and Acura vehicles since at least 2013.

11.      As a defect that compromises the safety of the Class Vehicles, the Fuel Pump Defect renders the Class Vehicle less valuable than consumers paid and creates out-of-pocket expenses that the consumer is left to carry.  Such a defect also heightens any duty Defendants had to disclose the defect.

12.      Plaintiffs accordingly bring this class action complaint to recover on behalf of the Classes all relief to which they are entitled, including but not limited to recovery of the purchase price of their vehicles, compensation for overpayment and diminution in the value of their  vehicles, out-of-pocket and incidental expenses, and an injunction compelling Defendants to replace    or recall and fix the Class Vehicles.

## II.   PARTIES

### A.   Plaintiffs

**Plaintiff Jim Cummings**

13.    Plain Plaintiff Jim Cummings is a resident of the New Jersey, in Pennsauken Township. Plaintiff leased his 2018 Honda Accord (a Class Vehicle) at Piazza Honda of Springfield (an authorized Honda Dealership) in Springfield, Pennsylvania.

14.    Unknown to Plaintiff at the time the Class Vehicle was leased, it was equipped with the defective fuel system with the Fuel Pump Defect. Defendants' unfair, negligent, and deceptive conduct in designing,   manufacturing, marketing, selling, servicing, and leasing the Class Vehicle with the Fuel Pump Defect has caused Plaintiff damaged including diminished value of the   Class Vehicle.

15.    Plaintiff leased the Class Vehicle for personal and family uses. Prior to choosing  the Class Vehicle, Plaintiff considered the safety and reliability of the Class Vehicle, which was the subject of Defendants' extensive marketing of the Class Vehicles, which features were important to Plaintiff. At no time prior to Plaintiff's decision to acquire the Class Vehicle did Defendants disclose that the Class Vehicle possessed any fuel system defects.

16.    Had Honda disclosed the Fuel Pump Defect and the corresponding dangers, and the fact that Honda would require  Plaintiff to incur losses, Plaintiff would have received these disclosures, and he would not have chosen the Class Vehicle or would have paid less for it.

**Plaintiff David Dinkevich**

17.    Plaintiff David Dinkevich is a resident of the New Jersey, in Carteret. Plaintiff leased his 2019 Honda HRV (a Class Vehicle) at Honda at Staten (an authorized Honda Dealership) in Staten Island, New York.

18.     Unknown to Plaintiff at the time the Class Vehicle was leased, it was equipped with the defective fuel system with the Fuel Pump Defect. Defendants' unfair, negligent, and deceptive conduct in designing,   manufacturing, marketing, selling, servicing, and leasing the Class Vehicle with the Fuel Pump Defect has caused Plaintiff damaged including diminished value of the   Class Vehicle.

19.     Plaintiff leased the Class Vehicle for personal and family uses. Prior to choosing  the Class Vehicle, Plaintiff considered the safety and reliability of the Class Vehicle, which was the subject of Defendants' extensive marketing of the Class Vehicles, which features were important to Plaintiff. At no time prior to Plaintiff's decision to acquire the Class Vehicle did Defendants disclose that the Class Vehicle possessed any fuel system defects.

20.     Had Honda disclosed the Fuel Pump Defect and the corresponding dangers, and the fact that Honda would require   Plaintiff to incur losses, Plaintiff would have received these disclosures, and he would not have chosen the Class Vehicle or would have paid less for it.

**Plaintiff Richard Stein**

21.     Plaintiff Richard Stein is a resident of the New Jersey, in North Brunswick Township. Plaintiff leased his 2019 Honda Accord Hybrid (a Class Vehicle) at DCH Kay Honda (an authorized Honda Dealership) in Eatontown, New Jersey.

22.     Unknown to Plaintiff at the time the Class Vehicle was leased, it was equipped with the defective fuel system with the Fuel Pump Defect. Defendants' unfair, negligent, and deceptive conduct in designing,   manufacturing, marketing, selling, servicing, and leasing the Class Vehicle with the Fuel Pump Defect has caused Plaintiff damaged including diminished value of the   Class Vehicle.

23.     Plaintiff leased the Class Vehicle for personal and family uses. Prior to choosing  the Class Vehicle, Plaintiff considered the safety and reliability of the Class Vehicle, which was the subject

of Defendants' extensive marketing of the Class Vehicles, which features were important to Plaintiff. At no time prior to Plaintiff's decision to acquire the Class Vehicle did Defendants disclose that the Class Vehicle possessed any fuel system defects.

24.     Had Honda disclosed the Fuel Pump Defect and the corresponding dangers, and the fact that Honda would require  Plaintiff to incur losses, Plaintiff would have received these disclosures, and he would not have chosen the Class Vehicle or would have paid less for it.

**B.     Defendants**

**Honda Motor Company Limited**

25.     Defendant Honda Motor Company Limited ("HMCL") is a Japanese corporation located at 2-1-1, Minami-Aotoma Minato-Ku, 107-8556 Japan, and the parent company of Defendant American Honda Motor Company, Inc.

26.     HMCL through its many subsidiaries and related entities (including the co-Defendant here), designs, manufactures, markets, distributes and sells Honda and Acura automobiles in and throughout the United States.

**American Honda Motor Company, Inc.**

27.     Defendant American Honda Motor Company, Inc. ("AHM") is incorporated in California, with its primary place of business in Torrance, California.

28.     AHM in the sales and marketing, and wholly owned subsidiary of HMCL for the United States.  AHM is responsible for designing, manufacturing, marketing, distributing, selling, and servicing Honda and Acura vehicles throughout the United States.

29.     AHM, through its network of dealerships and other entities, markets, sells and services Honda and Acura vehicles throughout the United States.

### III.        JURISDICTION

30.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness  Act of 2005, 28 U.S.C. § 1332(d), because at least one Class member is of diverse citizenship  from one defendant, there are more than 100 Class members nationwide, and the aggregate  amount in controversy exceeds $5,000,000 and minimal diversity exists. This Court also has  supplemental jurisdiction over the state law claims because those claims are integrally related to   the federal claims and form part of the same case and controversy under 28 U.S.C. § 1367.

31.     This Court has personal jurisdiction over Honda by virtue of its transacting and doing business in this District, including maintaining key dealerships throughout the state of New Jersey. Defendants have purposefully availed itself of the benefits and protections of  the District of New Jersey by continuously and systematically conducting substantial business in  this judicial district.

### IV.        VENUE

32.     Venue is proper pursuant to 28 U.S.C. § 1391(a) & (b) because a substantial part  of the events or omissions giving rise to the claims occurred in this District. Honda licenses  authorized dealers in this District, it advertises in this District, and it profits from its activities  conducted within this District.

### V.        FACTUAL ALLEGATIONS

**A.      The Defective Fuel System**

33.     The Honda fuel system relies on two fuel pumps to supply fuel to the engine: a low pressure fuel pump (in-tank) and high pressure fuel pump (in-line). The low pressure fuel pump is mounted inside the fuel tank and pumps fuel from the fuel tank to the engine by pushing fuel to the fuel injection system. The impeller, located under the pump motor is a plastic disk that rotates and draws in fuel and impels it up through the pump, which looks like this:



34.     On April 27, 2020, the manufacturer of the defective fuel pumps issued a Safety Recall Report identified the impeller in the fuel pumps as the source of the problem, stating that the impeller "may become deformed under certain conditions which could render the pump inoperable."  Exhibit F hereto.  The risk posed by a pump rendered suddenly inoperable by the defect was clear:  "illumination of the check engine light and/or master warning indicators, rough engine running, engine no start and/or vehicle stalling while driving at low speeds and, in rare instances, a vehicle stall could occur while driving at higher speeds, increasing the risk of a crash." *Id.* at 4.

35.     In May 28, 2020, Honda acknowledged in its Initial Safety Recall Report that each and every vehicle subject to the recall had a defective fuel pump with the impeller which was "manufactured with low density impellers. If the surface of the lower density impeller is exposed to production solvent drying for longer periods of time, higher levels of surface cracking may occur. These cracks may lead to excessive fuel absorption, resulting in impeller deformation. Over time, if an impeller deforms to a point that creates sufficient interference with the fuel pump body, the fuel pump becomes inoperative." Exhibit A at 1, 6.

36.     Honda also admitted in the Initial Safety Recall Report that "[f]uel pump inoperability could prevent an engine from starting or stall an engine while driving, increasing the risk of crash."  *Id.* at 7.

37.     Put simply, as admitted to by Honda, each of the Class Vehicles has in it a fuel pump that could fail at any moment.  Failure while in operation could lead to a complete loss of power, leaving drivers and those around the vehicle, in danger of crashes, including crashes at high speeds.

**B.     Honda Has Not Acted to Address the Fuel Pump Defect in Class Vehicles**

38.     Notwithstanding the potentially catastrophic consequences of failure, Honda delayed in reacting to the failures that were happening in the field long before the Initial Safety Recall, and the recall ultimately included only some vehicles believed to have a defective fuel pump, many of which still have defective fuel pumps.

39.     Honda has for many years sourced components from and maintained a close relationship with Denso Corporation, a major Japanese auto parts supplier.

40.     As early as 2015, the manufacturer recognized that the low-pressure fuel pumps that it supplied to Defendants and other manufacturers were prone to failure in the same manner as the failure that drove the Initial Safety Recall.

41.     In a patent application filed in 2016, Denso admitted that the composite (plastic) impellers in its current and earlier low-pressure fuel pumps "may be swelled due to the fuel and water contained in the fuel, [and] therefore a rotation of the impeller may be stopped when the impeller is swelled and comes in contact with the [fuel pump] housing."

42.     By the time of the manufacturer recall, Honda already knew about the Fuel Pump Defect.  Honda is believed to have known about the Fuel Pump Defect for several years prior to the Initial Safety Recall, and as early as 2016.  In its Initial Safety Recall, Honda admitted

knowledge since, at least, February 2019.  Exhibit A at 9-10.  However, it took no action to address the consequences of the Fuel Pump Defect until the middle of 2020, when it finally began to notify dealers about the Fuel Pump Defect, and then in only some of the Class Vehicles.  Honda's outreach to owners lagged even further behind, with a schedule for notice to some owners not commencing until July 2020 (Exhibit C at 9-10), and parts for some of the Recalled Vehicles still not available as of the filing of this action (Exhibit E at 10).

43.     As of the time of the filing of this action, Honda has failed to notify all Class Members of the Fuel Pump Defect and has not replaced all the defective fuel pumps.

44.     From the outset, Honda's actions to address the Fuel Pump Defect lagged far behind the reality of the Fuel Pump Defect.  To this day, Honda has left the owners of the Class Vehicles to shoulder the risk of the defective fuel pumps.

45.     Despite the severe safety concerns raised by the defect, Plaintiffs believe that Honda has not acknowledged the full extent of the defect or full scope of the Class Vehicles and has not provided full notice and remediation of the defect even in all the Recalled Vehicles.  Owners of Class Vehicles are left without the means to replace the pump or even the knowledge that this dangerous defect exists. At no time has Honda provided the explicit warning that the vehicles should not be driven, or provided means to allow owners to avoid driving vehicles with the Fuel Pump Defect.

46.     Even for the Recalled Vehicles, Honda has not fulfilled its obligations.  Since public acknowledgment of the defect, NHTSA has been swamped with complaints by owners who either have not received notice of the defect (and the recall repair) or have been turned away at dealers when they seek to have their defective fuel pumps replaced.

47.     These reports have included persons whose fuel pump failed and being told to wait for the parts to become available.  For example, here is a sample of reports made to NHTSA by drivers being left with unsafe fuel pumps that have failed during the pendency of the recall:

> TL* THE CONTACT OWNS A 2019 HONDA HR-V. THE CONTACT STATED THAT WHILE DRIVING AT LOW SPEEDS, THE VEHICLE STALLED WITHOUT WARNING. THE CONTACT RECEIVED NOTIFICATION OF NHTSA CAMPAIGN NUMBER: 20V314000 (FUEL SYSTEM, GASOLINE). THE CONTACT STATED THE MANUFACTURER EXCEEDED A REASONABLE AMOUNT OF TIME FOR THE RECALL REPAIR. THE CONTACT CALLED COURTESY PALM HARBOR HONDA (31200 US HWY 19 N, PALM HARBOR, FL 34684 (727) 263-3103) WHO STATED THAT THE VEHICLE OPERATED AS DESIGNED. THE VEHICLE WAS NOT DIAGNOSED NOR REPAIRED. AFTER THE RECALL LETTER WAS RECEIVED, THE CONTACT WAS INFORMED THAT THE REMEDY PART WAS NOT YET AVAILABLE. THE CONTACT STATED THE VEHICLE WAS UNSAFE TO DRIVE. THE MANUFACTURER WAS CONTACTED AND INFORMED THE CONTACT THAT THE REMEDY PARTS WERE ON BACK ORDER FOR TWO WEEKS. THE FAILURE MILEAGE WAS 4,568. VIN TOOL CONFIRMS PARTS NOT AVAILABLE.*DT*JB[2]

> MILLER HONDA, MY DEALER GOT A NOTICE OF RECALL ON 5/29/2020 FOR IMPORTANT SAFETY RECALL DEFECT IN MY MODEL OF CAR"FUEL PUMP MODULE IMPELLERS MAY ABSORB EXCESSIVE FUEL AND DEFORM CAUSING CAR TO STOP WHILE IN MOTION CAUSING A CAR CRASH. ALSO, WILL FAIL INSPECTION. PARTS WILL NOT BE AVAILABLE THEY SAY UNTIL POSSIBLY END OF SUMMER. THIS IS UNACCEPTABLE AND I WANT TO RETURN THE CAR AND MY MONEY REFUNDED BY HONDA MOTORS ON THE LEASE I'VE BEEN PAYING ON. I AM NOT ABLE TO DRIVE MY CAR AND I COULD BE KILLED OR KILL SOMEONE ELSE AND MILLER HONDA CANNOT HELP ME. THERE FORE, I WANT TO RETURN MY VEHICLE 2019 HONDA FIT CVT MILEAGE 1,746 MILES. I HAVE NOTICED THE HESITATION IN THE CAR WHILE DRIVING. THANK HEAVEN I WAS NOT KILLED BY NOW AND I NEED A CAR TO DRIVE. THIS CAR CAN NOT BE REPAIRED AND IT HAS BEEN OVER 60DAYS SINCE THE RECALL, WHICH MILLER HID FROM ME, AS WELL AS HONDA MOTORS.[3]

48.     Similarly, many owners with Recalled Vehicles are being told that their vehicle is not eligible.  For example, these 2018 Accord owners had stalling incidents because of a bad fuel pump, but were told their vehicles was not the subject of the recall:

---

[2]  NHTSA Complaint No. 11350117 (Aug. 18, 2020).
[3]  NHTSA Complaint No. 11343023 (Aug. 3, 2020).

IN JANUARY ,I MADE A RIGHT TURN INTO TRAFFIC AND THE CAR COMPLETELY STALLED ON ME AND STOP RUNNING. I PUT IT IN PARK AND RESTARTED IT. THIS WAS A VERY FRIGHTENING EXPERIENCE, AND I FELT LIKE I PUT MYSELF AND 2 OTHER PASSENGERS IN DANGER. I TOOK IT INTO MY DEALER COGGIN HONDA IN FORT PIERCE FLORIDA TO BE CHECKED. THEY FOUND NO OBVIOUS REASON FOR THIS STALL. SOMETIME LATER, I READ ABOUT THE RECALL ON THE FUEL PUMP THAT DESCRIBED MY EVENT EXACTLY AS I HAD EXPERIENCED IT. WHEN I CHECKED THE RECALL, MY VIN # [XXX] IS NOT INCLUDED IN THE RECALL. I HAVE CONTACTED MY DEALER AND YOUR PUBLIC RELATIONS THAT SAID THEY CAN NOT REPAIR MY CAR BECAUSE ITS NOT ON THE LIST. I HAVE SAFELY DRIVEN HONDAS FOR MANY YEARS BUT WITH THIS SITUATION I NO LONGER FEEL SAFE DRIVING THIS VEHICLE AND HESITATE TO TRADE IT IN FOR SOMEONE ELSE TO DRIVE. CAN YOU HELP ME AND GIVE MY DEALER PERMISSION TO REPAIR OR REPLACE THIS FUEL PUMP AT YOUR EXPENSE AS IT SHOULD BE ON THE RECALL LIST ?[4]

HELLO, MY VEHICLE HAD TO BE TOWED INTO THE DEALER JUNE 12TH , MY FUEL PUMP DID FAIL , AND UNFORTUNATELY IS NOT FALLING UNDER THE RECALL NOTICE , I AM STILL WAITING TO THIS DAY JULY 2ND FOR A ETA OR ANY TYPE OF UPDATES ON PARTS ON THIS VEHICLE FOR THE FUEL PUMP AND ALSO I WOULD LOVE TO KNOW OR UNDERSTAND HOW MY FUEL PUMP JUST RANDOMLY GOES OUT BUT ISNT FALLING UNDER THIS RECALL , PLEASE ID LOVE SOME ANSWERS OR SOME HELP.[5]

49.     Others are simply reporting being turned away when they go to the dealership, being told that there are no replacement fuel pumps available.  For example, here are reports by owners and lessees concerned that there are no replacement parts and their vehicles remain unsafe to drive, including some less than a month ago:

RCV?D RECALL NOTICE AT END OF JULY FOR FUEL PUMP MODULE WITH ?OUT OF SPECIFICATION IMPELLERS. OVERTIME, THESE IMPELLERS MAY ABSORB AN EXCESSIVE AMOUNT OF FUEL AND DEFORM. A DEFORMED IMPELLER MAY CAUSE THE FUEL PUMP TO STOP WORKING?.
DID NOT RECEIVE NOTIFICATION UNTIL THE END OF JULY 2020 WHEN THE RECALL WAS SET IN MAY 2020. DEALER WHERE I PURCHASED VEHICLE WAS UNAWARE OF THE RECALL AND CHECKED IN THE BEGINNING OF AUGUST SAYING THE PARTS WERE NOT YET

---

[4]  NHTSA Complaint No. 11348991 (Aug. 13, 2020).
[5]  NHTSA Complaint No. 11337203 (June 2, 2020).

RELEASED BY HONDA. [6]

I RECEIVED A RECALL NOTIFICATION ON MAY 28, 2020. I HAVE CALLED THREE TIMES SINCE JUNE 1, 2020 AND I AM BEING TOLD THAT THERE ARE NO PARTS FROM THE MANUFACTURER TO REPAIR THE RECALL.[7]

TL* THE CONTACT OWNS A 2018 HONDA HR-V. THE CONTACT RECEIVED NOTIFICATION OF NHTSA CAMPAIGN NUMBER: 20V314000 (FUEL SYSTEM, GASOLINE) HOWEVER, THE PART TO DO THE RECALL REPAIR WAS NOT AVAILABLE. THE CONTACT STATED THAT THE MANUFACTURER EXCEEDED A REASONABLE AMOUNT OF TIME FOR THE RECALL REPAIR. BAY RIDGE HONDA (8801 4TH AVE, BROOKLYN, NY 11209) WAS CONTACTED AND CONFIRMED THAT THE PART WAS NOT YET AVAILABLE. THE MANUFACTURER WAS MADE AWARE OF THE ISSUE. THE CONTACT HAD NOT EXPERIENCED A FAILURE. VIN TOOL CONFIRMS PARTS NOT AVAILABLE.[8]

TL* THE CONTACT OWNS A 2019 HONDA FIT. THE CONTACT RECEIVED NOTIFICATION OF A NHTSA CAMPAIGN NUMBER: 20V314000 (FUEL SYSTEM, GASOLINE) HOWEVER, THE PART TO DO THE REPAIR WAS UNAVAILABLE. THE CONTACT STATED THAT THE MANUFACTURER EXCEEDED A REASONABLE AMOUNT OF TIME FOR THE RECALL REPAIR. THE DEALER HONDA OF DOWNTOWN LOS ANGELES (780 W MARTIN LUTHER KING JR BLVD, LOS ANGELES, CA 90037, (213) 266-7366) WAS CONTACTED AND CONFIRMED THAT THE PART WAS NOT AVAILABLE FOR THE RECALL REMEDY. THE MANUFACTURER WAS MADE AWARE OF THE ISSUE. THE CONTACT HAD NOT EXPERIENCED A FAILURE. VIN TOOL CONFIRMS PARTS NOT AVAILABLE.[9]

50.     Rather than spend the money necessary to address the defect, or at least warn all affected customers that they have cars equipped with faulty fuel pumps, Honda has dropped the ball, and shifted the significant  and serious risk of inoperable vehicles, accidents, injury, and even death onto its customers.  Honda has not adequately notified all the effected consumers about the defect or advised them to stop driving their Class Vehicles until repairs can be made and does not provide

---

[6]   NHTSA Complaint No. 11352182 (Aug. 27, 2020).
[7]   NHTSA Complaint No. 11353017 (May 28, 2020).
[8]   NHTSA Complaint No. 11343336 (May 28, 2020).
[9]   NHTSA Complaint No. 11348643 (Aug. 11, 2020).

loaner cars or other, alternative transportation pending such repairs.   This leaves the consumers

shouldering the costs, both financial and in a sense of well-being and safety, of the fuel system defect

## C.   NHTSA Complaints Reveal the Serious Safety Risks Posed by the Fuel Pump Defect

51.   The legions of complaints of owners with Recalled Vehicles to NHTSA makes clear

the scope and impact of the defect in the Class Vehicles.  By way of example:

NHTSA ID Number: 11266487
Incident Date October 4, 2019
Consumer Location ELGIN, SC
Vehicle Identification Number 1HGCV2F95JA****
VEHICLE HAD ISSUES CRANKING AND THE DISPLAY HAD EVERY
ERROR CODE FLASHING ONE AFTER THE OTHER. AFTER GOING TO
THE DEALERSHIP WE WERE TOLD THAT IT WAS THE FUEL PUMP. IT
WAS REPLACED IN JULY. THE EXACT SAME ISSUE HAS HAPPENED
AGAIN IN OCTOBER IF THE SAME YEAR AND WE ARE BEING TOLD
THAT IT IS THE FUEL PUMP AGAIN.

NHTSA ID Number: 11326335
Incident Date May 23, 2020
Consumer Location BETHLEHEM, PA
SUDDEN LOSS OF POWER WHILE PASSING ON HIGHWAY FOLLOWED
BY NUMEROUS SYSTEM ERROR LIGHTS *BF*JB

NHTSA ID Number: 11245628
Incident Date August 11, 2019
Consumer Location SOUTHWEST RANCHES, FL
Vehicle Identification Number 5J8TC1H76KL****
ENGINE STALLS WHILE VEHICLE IS IN MOTION. VEHICLE IS ALREADY
IN MOTION, 40 MPH. WE SIMPLY STEPPED ON THE GAS PADDLE AND
THE CAR STALLED ON THE LEFT LANE.

NHTSA ID Number: 11301812
Incident Date January 18, 2020
Consumer Location FORT POLK, LA
Vehicle Identification Number 5J8TC2H66KL****
WHILE DRIVING MY 2019 ACURA RDX I ATTEMPTED TO PASS A
SLOWER MOVING VEHICLE. DURING ACCELERATION MY ENGINE
LIGHT STARTED FLASHING AND SIMULTANEOUSLY THE VEHICLE
LOST ALL POWER TO THE ENGINE. THIS PREVENTED ME FROM
PASSING AND FORCED ME TO FALL BACK IN BEHIND THE VEHICLE I
WAS PASSING. THIS WAS EXTREMELY DANGEROUS AND COULD
HAVE HAD CATASTROPHIC RESULTS IF ANOTHER VEHICLE WAS
APPROACHING. AFTER FALLING BACK IN BEHIND THE VEHICLE I

PULLED OFF ONTO THE SHOULDER. I TURNED OFF THE VEHICLE AND WAITED ABOUT 2 MINUTES AND UPON TURNING IT BACK ON; IT WAS BACK TO NORMAL. I PAID NEARLY $50,000. TO HAVE A SAFE AND RELIABLE VEHICLE. THIS VEHICLE IS SO UNSAFE TO DRIVE WITH THIS ISSUE IT BASICALLY SITS IN THE GARAGE. CONTACTING ACURA DEALERS / SERVICE DEPARTMENTS THEY KNOW ABOUT THIS BUT ARE WAITING FOR THE COMPANY ACURA TO COME UP WITH A SOLUTION. THIS VEHICLE IS NOT SAFE AND MY LIFE AND FAMILY'S LIFE WERE PUT INTO JEOPARDY. ACURA DOESN'T HAVE THE RIGHT TO PUT THEIR CUSTOMERS LIVES IN JEOPARDY. THEY NEED TO FIX THIS ISSUE OR ALLOW THEIR CUSTOMERS TO RETURN THIS DEFECTED VEHICLE IMMEDIATELY.

NHTSA ID Number: 11266937
Incident Date October 6, 2019
Consumer Location BROADVIEW HEIGHTS, OH
Vehicle Identification Number 5J8TC2H31KL****
ON OCTOBER 6, 2019 I WAS TRAVELING WEST ON INTERSTATE 80 IN WESTERN PENNSYLVANIA AT ABOUT 70 MPH. ACCELERATED IN THE LEFT LANE TO PASS ANOTHER VEHICLE WHEN THE ENGINE LOST POWER.. PULLED OVER TO THE SHOULDER AS MAXIMUM SPEED DROPPED TO 40, THEN 20, THEN ABOUT 10. CHECK ENGINE LIGHT WAS BLINKING AN ENGINE WAS RUNNING ROUGH. HAD CAR TOWED TO DEALER. IT IS CURRENTLY BEING EVALUATED.

NHTSA ID Number: 11240894
Incident Date July 30, 2019
Consumer Location YONKERS, NY
Vehicle Identification Number 5J8TC2H31KL****
I JUST BROUGHT A NEW 2019 RDX,IT ONLY HAS 315 MILES (IT HAS BEEN ONLY TWO AND HALF WEEKS).I WAS DRIVING ON THE HIGHWAY ON MY WAY TO WORK. I LOST ACCELERATION ON MY VEHICLE. I TRIED PRESSING THE ACCELERATOR NO REPONSE. ALL THE WARNING LIGHTS CAME ON ,THE ENGINE LIGHT,AWD, BRAKE SYSTEM, POWER STEERING, STABILITY AND TRACTION.
LUCKILY I WAS ABLE TO GET ON TO THE SHOULDER. AS I AM READING SIMILAR COMPLAINTS I NOTICE THAT SOME PEOPLE WERE ABLE TO SHUT OFF AND TURNING ON BACK THE VEHICLE , RESETTING THE CAR AND RESOLVING THE ISSUES. UNFORTUNATELY FOR THAT DID NOT WORK. I HAD TO BE TOWED BACK TO THE DEALERSHIP.

NHTSA ID Number: 11339712
Incident Date July 11, 2020
Consumer Location TEWKSBURY, MA
Vehicle Identification Number 3CZRU6H35KG****
CAR LOOSES ACCELERATION AT HIGH RATES OF SPEED WHILE
DRIVING ON HIGHWAY. ON AT LEAST 4 OCCASIONS EVEN WITH MY
FOOT ON THE GAS PEDAL IT JUST SLOWS TO UNSAFE LEVELS WHILE
ATTEMPTING TO ENTER ON THE HIGHWAY. THIS PASSED SATURDAY
WHILE IN THE FAST LANE IT JUST SLOWED TO 30 MPH WITH CARS
SLAMMING ON BRAKES BEHIND AND TO THE RIGHT OF ME.

NHTSA ID Number: 11210146
Incident Date May 25, 2019
Consumer Location OAKTON, VA
I WAS ON A STATE ROAD EXITING ON A RAMP WHILE THE VEHICLE
WAS IN MOTION DRIVING 40 MILES PER HOUR APPROXIMATELY TWO
DAYS AGO. THE VEHICLE WHILE IN MOTION AND ACCELERATING
STOPPED. THE CAR THREW ME BACK AND FORTH CAUSING ME TO GO
THE ER THE FOLLOWING DAY. RESTON HOSPITAL IN NORTHERN
VIRGINIA. I TOOK THE CAR RIGHT AFTER AND DROPPED OFF AT
DEALERSHIP FOR REPAIR. DEALERSHIP IS NOT GIVING ME ANY
CONCRETE ANSWERS IF THE CAR IS SAFE TO DRIVE AGAIN. I READ
ONLINE A OWNER OF A HONDA 2019 CIVIC SAME AS MINE HAD THE
SAME PROBLEM OF STOPPING WHILE IN MOTION WHILE ON A
HIGHWAY SUDDENLY. I DO HAVE PRODUCT UPDATE: FUEL LEVEL
SENSOR DTC SPACE P0461 SOFTWARE UPDATE NOTICE FROM HONDA
I JUST RECEIVED. DO NOT KNOW IF THIS IS INVOLVED WITH MY
CURRENT INCIDENT? I'M SCARED TO DRIVE MY NEW CAR AND NOW
IN PAIN MEDICINE , MUSCLE RELAXER MEDICINE AND HAVE BEEN
ISSUED A PLAN TO GO TO PHYSICAL THERAPY FROM THE DOCTOR ON
CALL AT THE ER.

NHTSA ID Number: 11243302
Incident Date July 23, 2019
Consumer Location Unknown
Vehicle Identification Number SHHFK7H99JU****
TL* THE CONTACT OWNS A 2018 HONDA CIVIC. WHILE DRIVING
APPROXIMATELY 25 MPH, THE VEHICLE SUDDENLY STALLED. THE
VEHICLE'S STOP WARNING ALERT NOTIFIED THE DRIVER TO PULL
OVER. THE VEHICLE WAS TAKEN TO SCOTT ROBINSON HONDA (20340
HAWTHORNE BLVD, TORRANCE, CA 90503) TO BE DIAGNOSED, BUT
THEY WERE UNABLE TO REPLICATE THE FAILURE. THE DEALER
TURNED OFF THE SYSTEM SENSOR. THE CONTACT ALSO STATED
THAT THE STEERING WHEEL SEIZED. THE CONTACT TOOK THE
VEHICLE TO DCH GARDENA HONDA (15541 S WESTERN AVE,
GARDENA, CA 90249, 301-660-7286) WHERE THE FAILURE INITIALLY

COULD NOT BE REPLICATED. DURING THE THIRD TEST, WITH THE CONTACT IN THE VEHICLE, THE FAILURE RECURRED. THE VEHICLE WAS NOT REPAIRED AND THE CAUSE OF THE FAILURES WAS NOT SPECIFIED. THE CONTACT STATED THAT THEY WERE WAITING FOR HONDA'S CORPORATE OFFICE TO RESPOND. THE MANUFACTURER PROVIDED CASE NUMBER: 09732156. THE FAILURE MILEAGE WAS 11,200.

NHTSA ID Number: 11235236
Incident Date June 30, 2019
Consumer Location STAFFORD, VA
Vehicle Identification Number 1HGCM72647A****
ON 30 JUNE 2019, MY WIFE AND I WERE DRIVING BACK HOME TO VA FROM OK ON HIGHWAY 40 HEADING WEST NEAR SALLISAW OK. ROAD WAS WET AND WAS CLIMBING A HILL. I STEPPED ON ACCELERATOR TO PASS WHILE GOING ABOUT 65 MPH. THE ENGINE STUMBLED AND SHUTTERED, THE CHECK ENGINE LIGHT CAME ON AND CAR WENT FROM APPROX. 65 MPH DOWN TO 25 MPH. I HAD TO GET OVER TO THE BREAKDOWN LANE AND DRIVE ABOUT 6 MILES TO NEXT EXIT AT 25 MPH. PULLED IN AT A GAS STATION, OPEN THE HOOD, CHECKED THE OIL WHICH WAS GOOD. TOOK A BREAK, STARTED IT BACK UP AND DID NOT ATTEMPT TO PASS ANOTHER VEHICLE UNTIL THE NEXT TRIP TO NH. MILEAGE WAS APPROX. 5500. ON 23 JULY 2019, DRIVING BACK TO VA FROM NH ON HIGHWAY 84 HEADING SOUTH NEAR TOLLAND CT. ROAD WAS WET, LIGHT RAIN AND WAS CLIMBING A HILL. STEPPED ON ACCELERATOR TO PASS WHILE GOING ABOUT 65 MPH. ENGINE STUMBLED AND SHUTTERED, CHECK ENGINE LIGHT CAME ON, AND CAR AGAIN WENT FROM 65 MPH DOWN TO 35 MPH. AGAIN HAD TO CRAWL TO THE NEXT EXIT BUT THIS ONE WAS WITHIN 1 MILE. MILEAGE APPROX. 7800. STOPPED AT DUNKIN DONUTS, TOOK A FEW MINUTE BREAK, GOT BACK IN AND BABIED CARE UNTIL GETTING BACK HOME.
CALLED DEALERSHIP AND BROUGHT IN FOR DIAGNOSTIC CHECK ON 24 JULY 2019. DEALERSHIP SAID THAT THERE WAS NO RECORD OF THE CAR SHUTTING DOWN OR ENGINE LIGHT COMING ON.

52.     However, the Class Vehicles include more than the Recalled Vehicles. Many owner of models older than ones in the recall.  For example, owners of Honda's most popular models for model years as early as 2013 have reported failures identical to those of the Recalled Vehicles, many later found to have bad fuel pumps.  For example:

SINCE I FIRST PURCHASED MY 2013 HONDA ACCORD, THE HONDA HAS INTERMITTENT HESITATIONS AFTER STOPPING AT TRAFFIC LIGHTS,

STOP SIGNS, PARKING AND SO FORTH. FOR INSTANCE, FOR THE SECOND TIME IN THE LAST FIVE DAYS, I STOPPED, WENT INTO A STORE, RETURNED, CRANKED HONDA ACCORD, BACKED OUT, AND THE CAR WOULD NOT "GO." IT SIMPLY "STALLED" , FEBRUARY 03, 2014. THIS WAS MENTIONED IN 2012 TO SERVICE MANAGER, [XXX], AT HONDA DEALERSHIP SERVICE CENTER; IN MOBILE, AL, HE HAD ONE OF HIS TECHNICIANS TO TEST DRIVE MY HONDA. TECHNICIAN RETURNED AND CLAIMED, AFTER TESTING, AND TEST DRIVE, THAT HE COULD FIND NOTHING WRONG. I DID NOT RECEIVE ANY PAPERWORK OTHER THAN A VERBAL ASSURANCE THAT I WAS PROBABLY JUST GETTING ADJUSTED TO THE "NEW CAR."
AFTER THAT, EVERY TWO WEEKS OR SO, I WOULD HAVE A "WHOLE WEEK OF INTERMITTENT" HESITATIONS AND STALLINGS. THIS IS VERY DANGEROUS WHEN TRYING TO GET THROUGH A TRAFFIC LIGHT - I HAVE TO REALLY PRESS DOWN ON THE ACCELERATOR FOR THE CAR TO FINELY DECIDE TO "GO". THIS PROBLEM WAS VERBALLY REPORTED AGAIN TO [XXX], SERVICE MANAGER, AND TECHNICIANS, JANUARY 10, 2013 - MILES 5,384. THE REPORT WAS, "GIVE IT SOME TIME, THE CAR IS STILL NEW." - NOW, AT 24,200 MILES, THIS 2013 HONDA ACCORD STILL SCARES ME. YESTERDAY (2/3/2014), AT A FOUR-WAY STOP, MY HONDA STALLED, THE ENGINE DID NOT "TURN OFF", BUT THE CAR WOULD NOT "GO." FOR ABOUT 15 SECONDS WHICH IS DANGEROUS WHEN IN THE MIDDLE OF THE ROAD.[10]

VEHICLE STALL, FAILED TO ACCELERATE . THE STALL IS COMMON AND HONDA NEEDS TO FIX THIS ISSUE BEFORE SOMEONE GETS INTO AN ACCIDENT . I WENT TO HONDA AND NO ISSUE WAS FOUND, I AM THINKING THIS MIGHT BE FUEL PUMP RECALL.[11]

SINCE I FIRST PURCHASED MY 2013 HONDA ACCORD, THE HONDA HAS INTERMITTENT HESITATIONS AFTER STOPPING AT TRAFFIC LIGHTS, STOP SIGNS, PARKING AND SO FORTH. FOR INSTANCE, FOR THE SECOND TIME IN THE LAST FIVE DAYS, I STOPPED, WENT INTO A STORE, RETURNED, CRANKED HONDA ACCORD, BACKED OUT, AND THE CAR WOULD NOT "GO." IT SIMPLY "STALLED" , FEBRUARY 03, 2014. THIS WAS MENTIONED IN 2012 TO SERVICE MANAGER, [XXX], AT HONDA DEALERSHIP SERVICE CENTER; IN MOBILE, AL, HE HAD ONE OF HIS TECHNICIANS TO TEST DRIVE MY HONDA. TECHNICIAN RETURNED AND CLAIMED, AFTER TESTING, AND TEST DRIVE, THAT HE COULD FIND NOTHING WRONG. I DID NOT RECEIVE ANY PAPERWORK OTHER THAN A VERBAL ASSURANCE THAT I WAS PROBABLY JUST GETTING ADJUSTED TO THE "NEW CAR."
AFTER THAT, EVERY TWO WEEKS OR SO, I WOULD HAVE A "WHOLE WEEK

---

[10]   NHTSA Complaint No. 10562814 (2013 Accord, Feb. 4, 2014)..
[11]   NHTSA Complaint No. 11331753 (2013 Accord, June 30, 2020).

OF INTERMITTENT" HESITATIONS AND STALLINGS. THIS IS VERY DANGEROUS WHEN TRYING TO GET THROUGH A TRAFFIC LIGHT - I HAVE TO REALLY PRESS DOWN ON THE ACCELERATOR FOR THE CAR TO FINELY DECIDE TO "GO". THIS PROBLEM WAS VERBALLY REPORTED AGAIN TO [XXX], SERVICE MANAGER, AND TECHNICIANS, JANUARY 10, 2013 - MILES 5,384. THE REPORT WAS, "GIVE IT SOME TIME, THE CAR IS STILL NEW." - NOW, AT 24,200 MILES, THIS 2013 HONDA ACCORD STILL SCARES ME. YESTERDAY (2/3/2014), AT A FOUR-WAY STOP, MY HONDA STALLED, THE ENGINE DID NOT "TURN OFF", BUT THE CAR WOULD NOT "GO." FOR ABOUT 15 SECONDS WHICH IS DANGEROUS WHEN IN THE MIDDLE OF THE ROAD.[12]

THE CONTACT OWNS A 2014 HONDA CIVIC. THE CONTACT STATED WHILE DRIVING 20 MPH, THE VEHICLE SHUDDERED AND STALLED WITHOUT WARNING. THE CONTACT WAS ABLE TO RESTART THE VEHICLE AND DRIVE IT TO THE RESIDENCE. A DEALER WAS NOT CONTACTED AND THE VEHICLE WAS NOT DIAGNOSED NOR REPAIRED. THE MANUFACTURER WAS CONTACTED AND INFORMED OF THE FAILURE HOWEVER, THERE WAS NO ASSISTANCE PROVIDED. THE APPROXIMATE FAILURE MILEAGE WAS 140,000.[13]

THERE HAS BEEN AN ISSUE RECALLED FOR 2015 HONDA ACCORDS AND THEIR FUEL PUMP. I WAS ALMOST IN A CAR ACCIDENT WHILE IN A MAJOR HIGHWAY. WHY CAN'T THINS ISSUE BE FIXED, OR WHY ISN'T THERE A RECALL AVAILABLE FOR MY VIN? WHEN THERE IS AN ACTUAL RECALL ON THIS ISSUE.[14]

THE CAR SLOWED DOWN WHILE DRIVING ON CITY STREETS, AND THEN STOPPED COMPLETELY. ALSO WHEN I STOPPED OR WAS SLOWING DOWN, MADE A TURN OR BRAKING THE SAME THING OCCURRED. THIS HAPPENED SEVERAL TIMES ON INDIVIDUAL DAYS. I PUT ON MY FLASHING HAZARD LIGHTS TO PREVENT BEING HIT FROM BEHIND ON BUSY STREETS. I HAVE READ ABOUT HIS HAPPENING TO SEVERAL OTHER DRIVERS WHEN I WAS RESEARCHING IT ONLINE. THIS IS A VERY DANGEROUS SITUATION. I DO NOT FEEL SAFE DRIVING HIS CAR, IT'S LIKE RUSSIAN ROULETTE. I AM HAVING IT CHECKED OUT TOMORROW AT A HONDA DEALER.IT MAY TAKE A WHILE FOR DIAGNOSIS OF THE CAUSE. I WAS SURPRISED THAT THIS WAS NOT LISTED AS A RECALLED VEHICLE. SINCE HIS HAS HAPPENED ON DIFFERENT DATES I WILL JUST LIST THE LATEST DATE BELOW.[15]

---

[12]   NHTSA Complaint No. 10562814 (2013 Accord, Feb, 4, 2014).
[13]   NHTSA Complaint No. 11309014 (2014 Civic, Feb, 13, 2020).
[14]   NHTSA Complaint No. 11241825 (2105 Accord, Aug. 5, 2019).
[15]   NHTSA Complaint No. 11210823 (2015 Civic, May 30, 2019).

THE VEHICLE STALLS OUT (LIMP MODE) WHEN ACCELERATING PAST
60 MPH. IT WILL NOT GO ABOVE 3000 RPMS. ONCE THAT HAPPENS, IT
IS DIFFICULT TO ACCELERATE AT ALL, EVEN AT VERY LOW SPEEDS. I
CAN PRESS THE PEDAL TO THE FLOOR AND NOTHING HAPPENS. THE
VEHICLE SHAKES CONSIDERABLY WHEN IDLE.[16]

I WAS DRIVING ON THE HIGHWAY WHEN ALL OF THE SUDDEN MY
VEHICLE STARTED STALLING, THEN IT SIMPLY LOST ALL FORCE AND
WOULD NOT GO. I HAD TO GET THE VEHICLE TOWED AND UPON
INSPECTION IT RESULTED WITH A DEFECTIVE FUEL PUMP THAT
NEEDS TO BE REPLACED. THE VENICE IS NOT THAT OLD TO HAVE
THAT KIND OF ISSUE, AND A CO-WORKER OF MINE HAD THE SAME
ISSUE WITH THEIR VEHICLE WHICH IS ALSO A 2016 HONDA ACCORD. I
DID SOME RESEARCH IN SOME FORUMS AND IT SEEMED THAT MANY
PEOPLE WERE REPORTING SIMILAR ISSUES WITH THE FUEL PUMP
WITH MODELS BETWEEN 2015 THROUGH 2019.[17]

TL* THE CONTACT OWNS A 2016 HONDA CIVIC. WHILE DRIVING 10
MPH, THE ACCELERATOR PEDAL WAS DEPRESSED AND THE VEHICLE
STALLED. ON ANOTHER OCCASION, THE ACCELERATOR PEDAL WAS
DEPRESSED AND THE VEHICLE FAILED TO RESPOND. THE VEHICLE
WAS NOT TAKEN TO BE DIAGNOSED OR REPAIRED. THE
MANUFACTURER WAS NOTIFIED OF THE FAILURE. THE APPROXIMATE
FAILURE MILEAGE WAS 5,000.[18]

I WAS ON MY WAY TO WORK ON A MAJOR HIGHWAY AND MY CAR
STARTED STALLING A JERKED FORWARD ALMOST CAUSING A
COLLISION I PULLED OVER TO A SAFE AREA AND CALLED MY FAMILY
MEMBER HE HAD TO DRIVE IT TO ADVANCE AUTO AND THEY
DIAGNOSED IT AS A FAULTY FUEL PUMP. I CALLED HONDA AND MY
INSURANCE COMPANY AND GOT THE CAR TOWED TO HONDA WHERE
IT WAS ALSO DIAGNOSED AS A FUEL PUMP TO BE REPLACED PER
THEM MY CAR HAD NO OTHER ISSUES AS I ALWAYS KEEP UP THE
MAINTENANCE ON THE CAR AS I?M STILL PAYING FOR IT. THE ONLY
COMPANY THAT HAS THIS PART WAS HONDA SO THEY ORDERED THE
PART AND ATTEMPTED TO REPLACE IT.[19]

THE ISSUE STARTED WHEN I WAS BARELY OVER 42,000 MILES, MAYBE
7 MONTHS AGO IN OCTOBER OF 2019. THE CAR WOULD STALL AFTER
IT WAS PARKED FOR A LITTLE OVER 5 MINUTES. I REPLACED THE
BATTERY ON IT AND EVERYTHING WORKED FINE FOR ANOTHER

---

[16]   NHTSA Complaint No. 11349893 (2015 Acura RDX, Aug. 17, 2020).
[17]   NHTSA Complaint No. 11355471 (2016 Accord. Sept. 17, 2020).
[18]   NHTSA Complaint No. 10860494 (2016 Civic, Apr. 20, 2016).
[19]   NHTSA Complaint No. 11325921 (2016 Accord, May 26, 2020).

COUPLE OF DAYS. THEN, IT STALLED AGAIN. I TOOK IT TO THE HONDA SERVICE CENTER AND THEY WERE NOT ABLE TO FIND A DEFECT ON THE CAR. I DECIDED TO TAKE IT RUN A DIAGNOSTICS THROUGH A THIRD PARTY AFTER TWO DAYS AGO, IT STALLED AS I WAS DRIVING HOME. THE DIAGNOSTICS SAID MY CAR HAS A DEFECTIVE FUEL PUMP. WHAT IS REALLY IRRESPONSIBLE ON HONDA'S PART IS THE FACT THAT I TAKE IT EVERY TIME AND I HAVE ASKED THEM TO RUN THIS DIAGNOSTICS AND THEY HAVE NOT DONE SO.[20]

TL* THE CONTACT OWNS A 2017 ACURA RDX. THE CONTACT STATED THAT WHILE DEPRESSING THE ACCELERATOR PEDAL, THE VEHICLE HESITATED TO ACCELERATE. IN ADDITION, THE VEHICLE ACCELERATED ABRUPTLY ON SEVERAL OCCASIONS. THE CONTACT THAT ON SEVERAL OCCASIONS WHILE DRIVING, THE VEHICLE STALLED WITHOUT WARNING. THE CONTACT STATED THAT THE VEHICLE RESTARTED INDEPENDENTLY. THE VEHICLE WAS TAKEN TO KEY ACURA OF GAINESVILLE (3435 N MAIN ST, GAINESVILLE, FL 32609) ON THREE SEPARATE OCCASIONS HOWEVER, THE MECHANIC WAS UNABLE TO DETERMINE THE CAUSE OF THE FAILURE. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS NOT NOTIFIED OF THE FAILURE. THE APPROXIMATE FAILURE MILEAGE WAS 22,000.[21]

## D.    Honda Marketed the Class Vehicles as Safe  and Reliable

53.    One of Honda's key marketing points has always been the practical claims of the safety and reliability of their vehicles.  Defendants want and intend consumers, including purchasers of Class Vehicles, to buy their vehicles because they believe them to be safe and  reliable as asserted by Defendant.

54.    As a centerpiece of its marketing, Honda's website amplifies this message and emphasizes the safety and  dependability of Honda's, including the Class Vehicles. Below is a screenshot from    Honda's    website    dedicated    to    the    safety    of    its    vehicles:

https://automobiles.honda.com/safety

---

[20]   NHTSA Complaint No. 11320102 (2016 Accord, Apr. 3, 2020).
[21]   NHTSA Complaint No. 11329513 (2017 Acura RDX, June 18, 2020).



55.    Honda's claim that its vehicles will deliver "Safety for Everyone", including "drivers, passengers and pedestrians alike" is entirely belied by the Fuel Pump Defect and Honda's failure to fully and properly address the defect.  Yet, it this theme is developed widely by Honda:[22]



---

[22]  https://www.honda.com/safety/imagine-no-more-collisions (last visited Sept. 16, 2020).

56.     As for Honda's Acura brand, Honda promises safety as part of the state-of-the art technology in these luxury vehicles:[23]



Acura is committed to precision crafted performance, and an enormous part of that for both our clients and ourselves is the safety performance and security that has become synonymous with our vehicles.

57.     The theme of safety is woven through the marketing for each of the Class Vehicles. For example, the brochure for the 2018 Civic puts safety in terms of "peace of mind" and as more than simple safety features:

---

[23]   https://www.honda.com/safety/acura-is-luxuriously-secure (last visited Sept. 16, 2020).



58.     The 2018 Honda HR-V promised in its brochure to put safety in the front seat of every vehicle, not in the back seat:



59.     The 2019 Acura RLX is shown as synonymous with SAFETY, with the captioned promise from Honda that "we always put safety first, so when it comes to helping to protect our passengers, we ask ourselves one simple question: 'Is it safe enough or our own families to ride in?'":



60.     Representations of the safety and reliability of Honda's vehicles are part of Honda's long-term marketing campaign.  For example, in their marketing of the Honda Accord, Honda states that it set the standard in the industry for reliability and safety:[24]

---

[24]     https://automobiles.honda.com/accord (last visited Sept. 16, 2020).

## Setting the Standard

For nine generations, the fun-to-drive Accord has consistently brought the automotive mainstream unforeseen levels of technology, fuel-efficiency, safety and reliability.

The Accord introduced the world to our V-6 engine, became the first car to pass strict Ultra-Low Emission Vehicle standards, and raised the bar with our Honda Sensing® suite of safety and driver-assistive technologies. From advanced powertrains to addressing environmental issues, these milestones have changed what American consumers expect in a quality automobile.

61.     Honda's promises of the safety of its vehicles were broken by the use of the defective fuel pumps and failure to act to fully and adequately remediate the defect and fulfill the promises made through the recall.

62.     Even as Honda has known for at least a year and a half about the Fuel Pump Defect, it decided to  continue to emphasize the long-term message that its vehicles are safe and reliable, including the Class Vehicles. Defendants never disclosed the Fuel Pump Defect or the unreasonable risk to safety it  poses.

63.     Honda's advertising for Class Vehicles conveys a pervasive message that its vehicles are safe and reliable. Safety and reliability are material to consumers when purchasing  or leasing a vehicle, particularly a Honda or Acura vehicle.

64.     Honda advertised Class Vehicles as safe and reliable, but it concealed the  danger of the Fuel Pump Defect before and after the sale or lease of the Class Vehicles and to the detriment of consumers.

**E.**     **Plaintiffs and Class Members Would Not Have Chosen or Would Have Paid Less for Class Vehicles Had They Known of the Fuel Pump Defect**

65.      No owner or lessee of a Class Vehicle would have purchased their vehicle, or would have paid less for their Class Vehicle, had they known of the defect or that Defendants would fail to fix a known defect in the fuel system.

66.      As a result of the Fuel Pump Defect in Class Vehicles and the costs associated with the defect, Plaintiffs and all Class members have suffered injury in fact, incurred damages, and have suffered harm as a result of Defendants' acts and omissions.

67.      Plaintiffs and each Class member suffered injury as they purchased their Class Vehicle under the express and implied warranties that their vehicles would operate safely and reliably throughout the useful life of such vehicles. A vehicle containing the Fuel Pump Defect does not operate as warranted and for its intended purpose because it does not operate safely or safely or reliably. Accordingly, a Class Vehicle is worth less than it would have been without the fuels system defect.

## VI.   TOLLING OF THE STATUTE OF LIMITATIONS

**A.**     **Discovery Rule Tolling**

68.      Within the time period of any applicable statutes of limitation, Plaintiffs and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Defendants were concealing the Fuel Pump Defect in the Class Vehicles and misrepresenting the safety, quality, and reliability of the Class Vehicles.

69.      Plaintiffs and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Defendants did not report information within their knowledge to federal and state authorities, the dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Defendants had concealed information

about the true nature of the Fuel Pump Defect in the Class Vehicles,  which was discovered by Plaintiffs only shortly before this action was filed. Nor, in any event,  would such an investigation on the part of Plaintiffs and other Class members have disclosed that   Defendants valued profits over the safety of its customers, their friends and family, and innocent  bystanders.

70.     For these reasons, all applicable statutes of limitation have been tolled by  operation of the discovery rule with respect to the claims asserted herein.

**B.     Fraudulent Concealment Tolling**

71.     All applicable statutes of limitation have also been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time  period relevant to this action.

72.     Instead of disclosing the existence of the Fuel Pump Defect, Defendants falsely represented that the Class Vehicles were safe, dependable, reliable, and of high quality.

**C.     Estoppel**

73.     Defendants were under a continuous duty to disclose to Plaintiffs and the other Class members the true character, quality, and nature of the fuel system in the Class Vehicles.

74.     Defendants knowingly, affirmatively, and actively concealed or recklessly disregarded  the true nature, quality, and character of the fuel system in the Class Vehicles.

75.     Based on the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## VIII.   CLASS ALLEGATIONS

76.     Plaintiffs bring this action on behalf of themselves and as a class action pursuant  to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of  the following classes ("Class" or "Classes"):

> All persons or entities who owned or leased a Honda or Acura vehicle with the defective Denso low-pressure fuel pump in the State of New Jersey.

All persons or entities who owned or leased a Honda or Acura vehicle with the defective Denso low-pressure fuel pump in the State of New York.

All persons or entities who owned or leased a Honda or Acura vehicle with the defective Denso low-pressure fuel pump in the Commonwealth of Pennsylvania.

77.     Excluded from the Classes are individuals who have personal injury claims resulting from the fuel system in the Class Vehicles. Also excluded from the Classes are Defendants and their officers, executives, subsidiaries and affiliates; governmental entities; and the Judge to whom this case is assigned and his/her immediate family.

78.     *Numerosity*. Federal Rule of Civil Procedure 23(a)(1): The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believes—based on publicly available sales data for the Class Vehicles—that there are at least hundreds of thousands of members of the Class, the precise number of Class members is unknown to Plaintiffs but may be ascertained from Defendants' books and records, as well as the recall reports that Defendants have submitted to NHTSA..

79.     *Commonality and Predominance*: Federal Rule of Civil Procedure 23(a)(2) & (b)(3): This action involves common questions of law and fact which predominate over any questions affecting individual Class members, including, without limitation:

    a.     Whether the Class Vehicles contain a defect in their fuel system;

    b.     Whether the Fuel Pump Defect is a safety defect;

    c.     The nature of uniform representations Defendants made about the Class Vehicles' safety and reliability.

    d.     Whether and how long Defendants knew about the defect in the fuel system of the Class Vehicles;

30

e.      Whether concealed information about the defect;

f.      The relevant warranties made by Defendants relating to the Class Vehicles, the fuel system and the Fuel Pump Defect;

g.      Whether Plaintiffs and the other Class members overpaid for their Class Vehicles; and

h.      Whether Plaintiffs and the other Class members are entitled to damages and other  monetary relief and, if so, in what amount.

80.     *Typicality*: Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were  comparably injured through Defendants'  wrongful conduct as described above.

*81.     Adequacy*: Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class Representatives because their interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

82.     *Declaratory Relief*: Federal Rule of Civil Procedure 23(b)(2): Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the  Classes, thereby making appropriate declaratory relief, with respect to each Class as a whole.

83.     *Superiority*: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no  unusual difficulties are likely to be encountered in the management of this class action. The  damages or other financial detriment suffered by Plaintiffs and the other Class members are  relatively small compared to the burden and expense that would be required to individually  litigate their claims against Defendant, so it would be impracticable for the members of the Classes  to individually

seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, such litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, a class action is suited and intended to manage such difficulties and provide the benefits of uniform and common adjudication, economy of scale, and comprehensive supervision.

## CAUSES OF ACTION

### COUNT I
### FRAUDULENT CONCEALMENT
(On Behalf of Each Class)

84.     Plaintiffs restate, reallege and incorporate herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

85.     Defendants intentionally concealed that the Class Vehicles are defective.

86.     Defendants further affirmatively misrepresented to Plaintiffs and the general public in advertising and other  forms of communication, including standard and uniform material provided with each Class Vehicle and on its website, that the Class Vehicles they were selling had no significant defects,  that the Class Vehicles were safe, reliable, and of high quality, and would perform and  operate in a safe manner.

87.     The Class Vehicles purchased by Plaintiffs and the other Class members  contained defective fuel systems.

88.     Defendants knew or should have known about the defect in the Class Vehicles when these representations  were made.

89.     Defendants had a duty to disclose that the Class Vehicles contained a defect as alleged herein, because of Defendants' material representations and such a defect presented a risk to safety.

90.     The truth about the defective Class Vehicles was known only to Defendant; Plaintiffs and the other Class members did not know and could not reasonably know of these facts, and Defendants actively concealed  these facts from Plaintiffs and Class members.

91.     Plaintiffs and the other Class members reasonably relied upon Defendants' deception.

92.     Defendants' false representations and omissions were material to consumers because they concerned the safety of the Class Vehicles, which played a significant role in the value of the Class Vehicles.

93.     Defendants have still not made full and adequate disclosures and continue to defraud Plaintiffs and Class members by concealing material information regarding the defect in the Class Vehicles.

94.     Plaintiffs and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for the Class Vehicles with the Fuel Pump Defect, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs and Class members' actions were justified. Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiffs, or Class members.

95.     Because of the concealment and/or suppression of facts, Plaintiffs and Class members sustained damage because they own Class Vehicles that are diminished in value as a result of Defendants' concealment of the true safety and quality of the Class Vehicles. Had Plaintiffs and Class members been aware of the Fuel Pump Defect, and Defendants' disregard for the truth, Plaintiffs and Class members would have paid less for their Class Vehicles or would not have purchased the Class Vehicles.

96.     As a direct result of Defendants' concealment of the defect, Plaintiffs and the Class also incurred out of pocket damages related to the defect.

97.     Defendants' acts were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and the

representations that Defendants made to them.  Accordingly, an assessment of punitive damages is also appropriate.

## COUNT II
## BREACH OF CONTRACT
(On Behalf of Each Class)

98.     Plaintiffs restates, reallege, and incorporate herein by reference, the preceding

99.     Defendants' misrepresentations and omissions alleged herein, including but not limited to, Defendants' concealment and suppression of material facts concerning the Class Vehicles, including the reliability and durability of the fuel system, caused Plaintiffs and  the other Class members to make their purchases or leases of their Class Vehicles.

100.    Absent those misrepresentations and omissions, Plaintiffs and the other Class members would not have purchased or leased these Class Vehicles, would not have purchased  or leased these Class Vehicles at the prices they paid, and/or would have purchased or leased  different vehicles that did not contain the Defective Fuel Pump. Accordingly, Plaintiffs and other   Class members overpaid for their Class Vehicles and did not receive the benefit of their  bargain.

101.    Each and every sale or lease of a Class Vehicle constitutes a contract between Defendants and the purchaser or lessee. Defendants breached these contracts by selling or leasing to  Plaintiffs and the other Class members defective Class Vehicles and by misrepresenting or failing to disclose material facts concerning the safety, durability, performance, and quality of  the Class Vehicles.

102.    As a direct and proximate result of Defendants' breach of contract, Plaintiffs and other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT III
## VIOLATIONS OF 15 U.S.C. § 2301, *ET SEQ.*
## THE MAGNUSON-MOSS WARRANTY ACT
(On Behalf of Each Class)

103.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

104.    Each Plaintiff and each Class Member is a "consumer" within the meaning of the Magnuson-Moss  Warranty Act, 15 U.S.C. § 2301(3).

105.    Defendants are each a "supplier" and "warrantor" within the meaning of the Magnuson-  Moss Warranty Act, 15 U.S.C. § 2301(4)–(5).

106.    The Class Vehicles are "consumer products" within the meaning of the  Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

107.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

108.    Defendants' written warranty within the meaning of the Magnuson Moss Warranty Act, 15 U.S.C. § 2301(6). The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

109.    Defendants breached these warranties, as described in more detail above. Without limitation, the Class Vehicles are equipped with a defective fuel system that can cause loss of power and stalls.

110.    Plaintiffs and the other Class members have had sufficient direct dealings with either Defendants or their agents (*e.g.*, dealerships and technical support) to establish privity of contract  with Defendant.  Alternately, privity is not required here because Plaintiffs and each of the other Class  members are intended third-party beneficiaries of contracts between Defendants and its dealers, and  specifically, of Defendants' implied warranties.

111.     At the time of sale or lease of each Class Vehicle, Defendants knew, should have known, or was reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the  situation and/or disclose the defective design.

112.     Defendants have expressly admitted the existence of the  Fuel Pump Defect and that it is a safety defect, but notwithstanding its recall of over one million Class Vehicles.  It has not offered a fix or indicated that a fix is available. Under the  circumstances, the remedies available under any informal settlement procedure would be  inadequate and any requirement that Plaintiffs resort to an informal dispute resolution procedure  and/or afford Defendants a reasonable opportunity to cure its breach of warranties is excused and  thereby deemed satisfied.

113.     The amount in controversy of Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

114.     Plaintiffs, individually and on behalf of the other Class members, seeks all  damages permitted by law, including diminution in value of the Class Vehicles, in an amount  to be proven at trial.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (On Behalf of Each Class)

115.     Plaintiffs restate, reallege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

116.     Each Defendant is a merchant with respect to motor vehicles under the relevant adoption of the Uniform Commercial Code.

117.   A warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiffs purchased or leased a Class Vehicle from Defendants.

118.   The Class Vehicles, when sold or leased and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

119.   Defendants marketed the Class Vehicles as safe, reliable, and high quality automobiles that would function as reasonably expected by consumers and in accordance with industry standards. Such representations formed the basis of the bargain in Plaintiffs' and Class members' decisions to purchase the Class Vehicles.

120.   Plaintiffs and other Class members purchased the Class Vehicles from Defendants, or through Defendants' authorized agents for retail sales. At all relevant times, Defendants were the manufacturer, distributor, warrantor, and/or seller of the Class Vehicles.

121.   Defendants knew or should have known the ordinary and specific use for which the Class Vehicles were purchased.

122.   Because of the Fuel Pump Defect, the Class Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

123.   Defendants knew about the defect in the Class Vehicles, allowing Defendants to cure their breach of warranty if they chose.

124.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability is unconscionable and unenforceable here. Specifically, such warranty limitations are unenforceable because Defendants knowingly sold or leased a defective product without informing consumers about the defect. Any applicable time limits contained in Defendants' warranty periods are also unconscionable and inadequate to protect Plaintiffs and other Class members. Among other things, Plaintiffs and other Class members had no meaningful choice in

38

determining these time limitations, the terms of which unreasonably favor Defendants. A gross disparity in bargaining power existed between Defendants on the one side and Plaintiffs and Class members on the other, particularly as Defendants knew of the defect at the time of sale or lease.

125.    Plaintiffs and Class members have afforded Defendants a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

126.    Defendants were provided notice of these issues by numerous complaints filed against it, internal investigations, postings on websites, and other sources.

127.    Accordingly, Defendants are liable to Plaintiffs and Class members for damages in an amount to be proven at trial.

## COUNT V
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### (On Behalf of Each Class)

128.    Plaintiffs restate, reallege, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

129.    Plaintiffs and other Class members entered into contracts with Defendants in connection with the acquisition of the Class Vehicles.

130.    Plaintiffs and other Class members performed all material obligations under the contracts.

131.    Implied in all contracts is a covenant of good faith and fair dealing, imposing a duty on the parties to act in good faith and deal fairly with one another.

132.    Plaintiffs and other Class members had a reasonable expectation that, when they purchased their Class Vehicles from Defendants, the Class Vehicles would be free of defects, especially defects that affected the safety and operability of the Class Vehicles.

133.    Defendants used their discretion to place inferior fuel pumps into the Class Vehicles without informing Plaintiffs and Class members that the fuel pumps would create a safety defect in the Class Vehicles.

134.    Plaintiffs and Class members had no reason to know Defendants  had such fuel pumps into the Class Vehicles.

135.    Defendants  breached the covenant of good faith and fair dealing and breached its contractual duty to  Plaintiffs and Class members by selling and leasing these Class Vehicles with the defect.

136.    As a direct and proximate result of Defendants' breach, Plaintiffs and Class members suffered damages, including being induced to purchase the defective Class Vehicles.

**COUNT VI**
**VIOLATIONS OF THE NEW JERSEY CONSUMER FRAUD ACT**
**(N.J. STAT. ANN. § 56:8-1, *ET SEQ.*)**
(On Behalf of the New Jersey Class)

137.    This Count is brought only by Plaintiff Stein and on behalf of the New Jersey Class.

138.    Plaintiff restates, realleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

139.    Defendants and Plaintiff and the Class members are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

140.    Defendants engaged in "sales" of "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c), (d).

141.    The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.* ("N.J. CFA"), makes unlawful "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentations, or the knowing concealment, suppression or omission, in connection with the sale or advertisement of

any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J. Stat. Ann. § 56:8-2.

142.    Defendants engaged in unconscionable commercial practice or deceptive acts or practices that violated the New Jersey CFA as described above and below, and did so with the intent that Plaintiff and the other Class members rely upon their acts of concealment, suppression, and/or omission.

143.    Defendants' conduct proximately caused injuries to Plaintiff and the other Class members.

144.    Defendants intentionally, affirmatively, and knowingly misrepresented material facts regarding the Class Vehicles with intent to mislead Plaintiff and the Class.

145.    Defendants also engaged in unconscionable and deceptive conduct by issuing a defective Recall that provides no remedy for the Fuel Pump Defect, does not notify Class members about the Fuel Pump Defect, does not instruct consumers to stop driving the dangerous Class Vehicles, does not notify consumers and offer them free loaner vehicles, and does not offer consumers free loaner vehicles of the same class as their own to enable them to cease driving their dangerous Class Vehicles until a repair is available and can be implemented.

146.    Plaintiff and other Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendants' conduct in that  Plaintiff and the other Class members overpaid for their Class Vehicles and did not receive   the benefit of their bargain, and their Class Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Defendants' misrepresentations, fraud, deceptive practices, and omissions.

147.     Defendants' violations present a continuing risk to Plaintiff as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

148.     Pursuant to N.J. Stat. Ann. § 56:8-19, Plaintiff and the other Class members seek an order enjoining Defendants' unlawful conduct and other injunctive relief, actual damages, treble damages, attorneys' fees, costs, and any other just and proper relief available under the New Jersey CPA.

## COUNT VII
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW
## (N.Y. GEN. BUS. LAW. § 349)
### (On Behalf of the New York Class)

149.     This Count is brought only by Plaintiff Dinkevich and on behalf of the New Jersey Class.

150.     Plaintiff restates, realleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

151.     GBL § 349(h) provides that "any person who has been injured by reason of any violation of this section may bring . . . an action to recover his actual damages or fifty dollars, whichever is greater."

152.     GBL § 349(h) further provides that "[t]he court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the defendant willfully or knowingly violated this section," and that "[t]he court may award reasonable attorney's fees to a prevailing plaintiff."

153.     Defendants' design, manufacture, distribution, marketing, advertising, labeling, and sale of the Class Vehicles constitutes "business, trade or commerce" under GBL § 349(a).

154.     Defendants' conduct violates GBL § 349 because Defendants engaged in the deceptive acts and practices described above.

155.    Defendants' deceptive conduct and its false and misleading statements about Class Vehicle safety and dependability and omissions regarding the Fuel Pump Defect, are facts that a reasonable person would have considered material in deciding whether or not to purchase or lease or how much they were willing to pay to purchase or lease the Class Vehicles.

156.    Defendants' acts and practices described above were likely to mislead a reasonable consumer acting reasonably under the circumstances, including Plaintiff and members of the Class.

157.    Plaintiff and the other Class members justifiably acted or relied to their detriment upon Defendants' misrepresentations and omissions of fact, as evidenced by Plaintiff and the other Class members' leasing and purchasing of Class Vehicles.

158.    Had Defendants disclosed all material information regarding the Fuel Pump Defect to Plaintiff and the other Class members, Plaintiff and the other Class members would not have purchased or leased Class Vehicles or would have paid less to do so.

159.    Defendants also engaged in deceptive conduct by issuing a defective Recall that provides no remedy for the Fuel Pump Defect, does not notify Class members about the Fuel Pump Defect, does not instruct consumers to stop driving the dangerous Class Vehicles, does not notify consumers and offer them free loaner vehicles, and does not offer consumers free loaner vehicles of the same class as their own to enable them to cease driving their dangerous Class Vehicles until a repair is available and can be implemented.

160.    As a direct and proximate result of Defendants' deceptive trade practices, Plaintiff and the other Class members have suffered ascertainable loss and actual damages. Plaintiff and the other Class members would not have purchased or leased the Class Vehicles or would have paid less for them had Defendants disclosed the truth about the Fuel Pump Defect. Plaintiff and the other Class members also suffered diminished value of their vehicles.

43

161.     Defendants' violation of GBL § 349 was willful and knowing. Defendants knowingly and willfully marketed the Class Vehicles as safe and dependable all the while knowing they were not.  Defendants, through their willful and knowing deceptive acts and practices, as detailed above, have willfully and knowingly exposed Plaintiff and the Class to the risk of serious injury and death, and continues to do so by virtue of having issued the deficient Recall.

162.     As a direct and proximate result of Defendants' conduct in violation of GBL § 349, Plaintiff and the members of the Class have been injured in an amount to be proven at trial, with a statutory minimum of fifty dollars per Class member. Because Defendants' violation was knowing and willful, Plaintiff is entitled to treble damages under GBL § 349(h).

163.     Plaintiff and the Class also seeks to enjoin Defendants' illegal conduct and related injunctive relief, and attorneys' fees and costs.

## COUNT VIII
## VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (73 P.S. §§ 201-1 *ET SEQ.*)
(On Behalf of the Pennsylvania Class)

164.     This Count is brought only by Plaintiff Jim Cummings and on behalf of the Pennsylvania Class.

165.     Plaintiff restates, realleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

166.     Plaintiff and members of the Class are persons within the meaning of the Pennsylvania Unfair trade Practices and Consumer Protection Law, 73 P.S. §§ 201-1 et seq. (hereinafter "PUTPCPL"), specifically § 201-2(2).

167.     Defendants are persons within the meaning of PUTPCPL, § 201-2(2).

168.    Defendants are engaged in trade and commerce within the meaning of PUTPCPL, § 201-2(3).

169.    Plaintiff and members of the Class purchased and/or leased Class Vehicles for personal, family or household use.

170.    Defendants committed unfair and deceptive acts in the course of trade and commerce as described in this complaint in violation of PUTPCPL, § 201-2(4)(v), (vii), (ix) and (xxi), inter alia.

171.    Defendants committed unconscionable, deceptive and unfair trade practices including but not limited to deception, fraud, false pretense, false promise, misrepresentation and the knowing concealment, suppression and omission of material facts concerning the Fuel Pump Defect with intent that Plaintiff and members of Class would rely upon their misrepresentations in connection with the purchase and/or lease of Class Vehicles.

172.    Defendants' deceptive trade practices were likely to deceive a consumer acting reasonably under the circumstances which Plaintiff and members of the Class paid money in purchasing and/or leasing their Class Vehicles which they would not have purchased or leased, or would have paid less to do so.

173.    Defendants also engaged in unconscionable and deceptive conduct by issuing a defective Recall that provides no remedy for the Fuel Pump Defect, does not notify Class members about the Fuel Pump Defect, does not instruct consumers to stop driving the dangerous Class Vehicles, does not notify consumers and offer them free loaner vehicles, and does not offer consumers free loaner vehicles of the same class as their own to enable them to cease driving their dangerous Class Vehicles until a repair is available and can be implemented.

174.    The conduct of Defendants offends public policy as established by statutes and common law; is immoral, unethical, oppressive and/or unscrupulous and caused unavoidable substantial injury to Class Vehicle owners (who were unable to have reasonably avoided the injury due to no fault of their own) without any countervailing benefits to consumers.

175.    Plaintiff and members of the Class seek restitution, disgorgement, statutory and actual damages including multiple damages, interest, costs, attorneys' fees and injunctive relief.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class, respectfully requests that the Court enter judgment in their favor and  against Defendant, as follows:

A.      Certification of the proposed Class with Plaintiffs as Class Representatives;

B.      Appointment of Plaintiffs' counsel as Class Counsel;

C.      Restitution, including recovery of the purchase  price of their Class Vehicles, or the overpayment or diminution in value of their Class Vehicles;

D.      Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial;

E.      Monetary relief under certain consumer protection statutes;

F.      An order requiring Defendants to pay both pre- and post-judgment interest on any  amounts awarded;

G.      An award of costs and attorneys' fees; and

H.      Such other or further relief as may be appropriate.

Dated: September 21, 2020                 Respectfully submitted,

                                          /s/ Christopher A. Seeger

                                          Christopher A. Seeger
                                          Christopher Ayers
                                          SEEGER WEISS LLP
                                          55 Challenger Road, 6th Floor
                                          Ridgefield Park, New Jersey 07660
                                          (973) 639-1000
                                          cseeger@seegerweiss.com
                                          cayers@seegerweiss.com

                                          Scott A. George
                                          SEEGER WEISS LLP
                                          1515 Market Street, Suite 1380
                                          Philadelphia, PA 19102
                                          (215) 564-2300
                                          sgeorge@seegerweiss.com

                                          James E. Cecchi
                                          CARELLA, BYRNE, CECCHI,
                                          OLSTEIN, BRIDY & ANGELO, P.C.
                                          5 Becker Farm Road
                                          Roseland, New Jersey 07068
                                          (973) 994-1700
                                          jcecchi@carellabyrne.com

                                          *Counsel for Plaintiff and the Proposed Class*

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial for all claims so triable.

Dated: September 21, 2020          Respectfully submitted,

                                   /s/ Christopher A. Seeger

                                   Christopher A. Seeger
                                   Christopher Ayers
                                   SEEGER WEISS LLP
                                   55 Challenger Road, 6th Floor
                                   Ridgefield Park, New Jersey 07660
                                   (973) 639-1000

                                   *Counsel for Plaintiff and the Proposed Class*